TOWN OF SPRUCE PINE, A MUNICIPAL CORPORATION, AND BRYANT ELECTRIC COMPANY, INC., PLAINTIFFS, V. AVERY COUNTY AND AVERY COUNTY BOARD OF COMMISSIONERS, CONSISTING OF SUSAN B. PITTMAN, PHYLLIS FORBES, BILL BEUTTELL, ARLENE ELLER, TOMMY BURLESON, INDIVIDUALLY, DEFENDANTS V. THE NORTH CAROLINA ENVIRONMENTAL MANAGEMENT COMMISSION, THE DIVISION OF ENVIRONMENTAL MANAGEMENT OF THE NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES; AND THE DIVISION OF ENVIRONMENTAL HEALTH OF THE NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, ADDITIONAL DEFENDANTS

No. 431A96

(Filed 24 July 1997)

**1. Constitutional Law § 49 (NCI4th)— constitutionality of statute—standing of county**

A county had standing to challenge the constitutionality of the Water Supply Watershed Protection Act where the county was not accepting benefits under the statute.

**Am Jur 2d, Constitutional Law §§ 190, 192-194, 461, 462, 535, 686, 744.**

**2. Environmental Protection, Regulation, and Conservation § 67 (NCI4th)— Water Supply Watershed Protection Act— not unconstitutional delegation of legislative power**

The legislative standards applicable to the decision to be made by the Environmental Management Commission are adequate to save the Water Supply Watershed Protection Act from being an unconstitutional delegation of legislative power where N.C.G.S. § 143-211 sets forth the goal which the General Assembly wants to reach in its water program, and N.C.G.S. § 143-214.5 provides for the management of the watersheds by controlling development density, performance-based alternatives, or a combination of both.

**Am Jur 2d, Zoning and Planning § 109.**

**3. Environmental Protection, Regulation, and Conservation § 67 (NCI4th)— Water Supply Watershed Protection Act— expungement of unconstitutional amendment**

Failure of the 1993 amendment which in effect exempted one watershed from the coverage of the Water Supply Watershed Protection Act to pass constitutional muster under the equal protection clauses of the federal and state constitutions did not render the entire Act unconstitutional; rather, the 1993 amendment may be expunged so that the Act is left intact.

**Am Jur 2d, Zoning and Planning § 109.**

Appeal by additional defendants pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 123 N.C. App. 704, 475 S.E.2d 233 (1996), reversing an order for summary judgment by Thornburg, J., entered on 23 June 1994 in Superior Court, Avery County. On 10 October 1996, this Court allowed discretionary review of an additional issue. Heard in the Supreme Court 17 March 1997.

This case brings to the Court the question of whether the Water Supply Watershed Protection Act (WSWPA), codified as N.C.G.S. §§ 143-214.5 and -214.6, is unconstitutional under the Constitution of North Carolina. The Court of Appeals held that the WSWPA violated Article I, Section 6 and Article II, Section 1 of our state Constitution because it unlawfully delegated legislative power to the North Carolina Environmental Management Commission (EMC).

**TOWN OF SPRUCE PINE v. AVERY COUNTY**

[346 N.C. 787 (1997)]

This case was commenced with the filing of a complaint by the Town of Spruce Pine and Bryant Electric Company, Inc. The plaintiffs alleged that Spruce Pine is a municipal corporation located in Mitchell County which had appealed to the commissioners of Avery County from the denial by the building inspector of Avery County of a building permit to plaintiffs to construct a raw water intake pump station on the Toe River in Avery County. The plaintiffs alleged that almost two months had elapsed since the hearing of their appeal, and no decision had been made. The plaintiffs prayed that a writ of mandamus be issued ordering the commissioners to make a decision.

The defendants filed an answer and counterclaim in which they alleged that the action of Spruce Pine in selecting the site in Avery County for the construction of an intake station was arbitrary and capricious. They also alleged that the WSWPA, which provides for zoning of watersheds, is an unconstitutional delegation of power by the General Assembly. The defendants moved that the State agencies listed in the heading of this opinion be made additional parties defendants. This motion was allowed.

On 23 June 1994, Judge Thornburg granted a motion for summary judgment by the additional defendants on defendants' claim that the WSWPA was unconstitutional. The defendants' claim that the action of Spruce Pine was arbitrary and capricious was tried by a jury. The jury could not reach a verdict, and after declaring a mistrial, Judge Morgan granted the plaintiffs' motion for a directed verdict. The defendants appealed from Judge Thornburg's order, but they did not appeal from Judge Morgan's order.

The Court of Appeals, in a divided opinion, reversed the superior court on the defendants' constitutional claim and held that the WSWPA is unconstitutional because it delegates legislative power to the EMC without adequate guiding standards. The additional defendants appealed to this Court.

*Ronald W. Howell, P.A., by Ronald W. Howell, for defendant-appellees.*

*Michael F. Easley, Attorney General, by Daniel F. McLawhorn and Kathryn Jones Cooper, Special Deputy Attorneys General, and Sarah Y. Meacham, Assistant Attorney General, for additional defendant-appellants.*

*Durham County Attorney's Office, by Lowell L. Siler, Deputy County Attorney, amicus curiae.*

*Conservation Council of North Carolina, by John D. Runkle, Attorney, and Nathaniel Mund, General Counsel, amicus curiae.*

WEBB, Justice.

[1] Before reaching the merits of the case, we deal with the question of Avery County's standing to challenge the constitutionality of the WSWPA. We held in *In re Appeal of Martin*, 286 N.C. 66, 209 S.E.2d 766 (1974), that a county may not challenge on constitutional grounds an exemption to the imposition of a personal property tax. We said a county may not tax property under a statute granting it authority to do so and at the same time attack another part of the statute as being unconstitutional.

In *City of New Bern v. New Bern-Craven County Bd. of Educ.*, 328 N.C. 557, 402 S.E.2d 623 (1991), and *Town of Emerald Isle v. State of N.C.*, 320 N.C. 640, 360 S.E.2d 756 (1987), we held that municipalities had standing to test the constitutionality of acts of the General Assembly. We did not mention *Martin* in those two cases, but apparently the distinction from *Martin* was that in *New Bern* and *Emerald Isle*, the municipalities were not accepting benefits under the statutes they challenged. Avery County is not accepting benefits under the statute challenged in this case. Pursuant to *New Bern* and *Emerald Isle*, we hold that Avery County has standing to challenge the constitutionality of the statute involved in this case.

In 1951, the General Assembly provided in legislation, codified as chapter 143, article 21 of the North Carolina General Statutes, for the creation of the EMC and empowered it to make regulations for the conservation of air and water resources. The EMC was not empowered to regulate land use in the areas around rivers and streams. In 1989, the WSWPA was enacted as a part of article 21, which enabled the EMC to adopt rules for the regulation of land use which affects the water supply in watersheds throughout the state. The construction of a water intake by the Town of Spruce Pine on the Toe River in Avery County will make the Toe River watershed subject to certain regulations of the EMC.

[2] The defendants contend and the Court of Appeals held that the WSWPA constitutes an unconstitutional delegation of the power to legislate. If the General Assembly has delegated to the EMC the power to make rules and regulations without an adequate standard to guide the EMC in executing the will of the General Assembly, the

WSWPA is an invalid delegation of legislative power. In determining whether legislation violates the rule that the General Assembly cannot delegate its power to legislate, we are guided by *Adams v. N.C. Dep't of Natural & Economic Resources*, 295 N.C. 683, 249 S.E.2d 402 (1978), in which we upheld the constitutionality of the Coastal Area Management Act. In that case we said:

> In the search for adequate guiding standards the primary sources of legislative guidance are declarations by the General Assembly of the legislative goals and policies which an agency is to apply when exercising its delegated powers. We have noted that such declarations need be only "as specific as the circumstances permit." *Turnpike Authority v. Pine Island*, [*Inc.*, 265 N.C. 109, 115, 143 S.E.2d 319, 323 (1965)]. *See also, Jernigan v. State*, [279 N.C. 556, 184 S.E.2d 259 (1971)]. When there is an obvious need for expertise in the achievement of legislative goals the General Assembly is not required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation of the legislation. It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances.

> Additionally, in determining whether a particular delegation of authority is supported by adequate guiding standards it is permissible to consider whether the authority vested in the agency is subject to procedural safeguards. A key purpose of the adequate guiding standards test is to "insure that the decision-making by the agency is not arbitrary and unreasoned." Glenn, [*The Coastal Management Act in the Courts: A Preliminary Analysis*, 53 N.C. L. Rev. 303, 315 (1974)]. Procedural safeguards tend to encourage adherence to legislative standards by the agency to which power has been delegated. We thus join the growing trend of authority which recognizes that the presence or absence of procedural safeguards is relevant to the broader question of whether a delegation of authority is accompanied by adequate guiding standards. *See* K. Davis, 1 *Administrative Law Treatises*, § 3.15 at p. 210 (2d ed. 1978).

*Adams*, 295 N.C. at 698, 249 S.E.2d at 411. Applying the principles articulated in *Adams*, we hold that the legislative standards applicable to the decisions to be made by the EMC are adequate to save the WSWPA from being an unconstitutional delegation of legislative power.

We begin our analysis of the application of the rule regarding the delegation of legislative power by noting that there is a strong presumption that enactments of the General Assembly are constitutional. *Wayne County Citizens Ass'n v. Wayne County Bd. of Comm'rs*, 328 N.C. 24, 399 S.E.2d 311 (1991). We also note that the classification of watersheds is a complex subject. It is not something the General Assembly can micro-manage.

We said in *Adams* that the primary sources of guiding standards are declarations by the General Assembly of the legislative goals and policies that an agency is to apply when exercising its delegated powers. In N.C.G.S. § 143-211 it is said that water and air quality standards are to be set so as to

protect human health, to prevent injury to plant and animal life, to prevent damage to public and private property, to insure the continued enjoyment of the natural attractions of the State, to encourage the expansion of employment opportunities, to provide a permanent foundation for healthy industrial development and to secure for the people of North Carolina, now and in the future, the beneficial uses of these great natural resources.

N.C.G.S. § 143-211 (1996). This sets the goal which the General Assembly wants to reach in the administration of its water program.

The General Assembly enacted a more specific standard in N.C.G.S. § 143-214.5 when it said:

The Commission shall adopt rules for the classification of water supply watersheds and that establish minimum statewide water supply watershed protection requirements applicable to each classification to protect surface water supplies by (i) controlling development density, (ii) providing for performance-based alternatives to development density controls that are based on sound engineering principles, or (iii) a combination of both (i) and (ii).

N.C.G.S. § 143-214.5(b) (1996). This subsection provides for the management of watersheds by controlling development density, performance-based alternatives, or a combination of both. This is a direction about as specific as could be. It is certainly as specific as circumstances permit. *Turnpike Authority v. Pine Island, Inc.*, 265 N.C. at 115, 143 S.E.2d at 323.

**TOWN OF SPRUCE PINE v. AVERY COUNTY**

[346 N.C. 787 (1997)]

In *Adams*, we said that procedural safeguards were to be considered in determining whether there was an abdication of legislative power. The procedural safeguards in this case were, to say the least, adequate. The rule-making power of the EMC is subject to chapter 150B of the General Statutes. N.C.G.S. § 143-214.1(e) (1996). The General Assembly created the Watershed Protection Advisory Council consisting of representatives of state and local government as well as special interest groups which met with the EMC seven times before rules were adopted. The WSWPA requires the EMC to submit reports quarterly on the implementation of the Act to the Environmental Review Commission, a legislative commission. In preparation for the adoption of rules, forty informational meetings and eight public hearings were held across the state. We believe these procedural safeguards show that the State retained as much control as was feasible over its legislative power.

[3] In 1993, the General Assembly adopted an act to exempt certain watersheds from the coverage of the WSWPA. Act of July 24, 1993, ch. 520, sec. 1, 1993 N.C. Sess. Laws 2122. The parties agree that the act was drawn so that it applied to one watershed only. The parties agree that there is no rational basis for so classifying the watershed. *See White v. Pate*, 308 N.C. 759, 304 S.E.2d 199 (1983). The defendant-appellees say that this makes the WSWPA violate the Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 19 of the Constitution of North Carolina because it is not applied equally throughout the state.

The additional defendant-appellants argue and we agree that the failure of the 1993 legislation to pass constitutional muster does not condemn the WSWPA. We said in *Flippin v. Jarrell*, 301 N.C. 108, 270 S.E.2d 482 (1980):

"[']A statute may be valid in part and invalid in part. If the parts are independent, or separable, *but not otherwise*, the invalid part may be rejected and the valid part may stand, provided it is complete in itself and capable of enforcement.[']" *Constantian v. Anson County*, 244 N.C. 221, 228, 93 S.E.2d 163, 168 (1956), *quoting* 82 C.J.S. *Statutes* § 92 (1953). (Emphasis supplied.)

*Flippin*, 301 N.C. at 118, 270 S.E.2d at 489 (citation omitted). The 1993 amendment may be expunged for being unconstitutional, which leaves the WSWPA intact.

For the reasons stated in this opinion, we reverse the Court of Appeals.

REVERSED.