BARNEY BRITT v. STATE OF NORTH CAROLINA

No. 488A07

(Filed 28 August 2009)

**Firearms and Other Weapons— possession by convicted felon—N.C.G.S. § 14-415.1 as amended in 2004—unreasonable regulation as applied to plaintiff**

The Court of Appeals erred to the extent that it determined N.C.G.S. § 14-415.1 as amended in 2004, that makes it "unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm," can be constitutionally applied to plaintiff whose right to possess firearms was restored in 1987 by operation of law after he completed his sentence for possession with intent to sell and deliver a controlled substance without incident in 1982, and this case is remanded to the Court of Appeals for further remand to the superior court for further proceedings not inconsistent with this opinion, because: (1) no evidence was presented that would indicate plaintiff was dangerous or has ever misused firearms, either before his crime or in the seventeen years between restoration of his rights and adoption of N.C.G.S. § 14-415.1's complete ban on any possession of a firearm by him; (2) plaintiff sought out advice from his local sheriff following the amendment of N.C.G.S. § 14-415.1 and willingly gave up his weapons when informed that possession would presumably violate the statute; (3) plaintiff, through his uncontested lifelong nonviolence toward other citizens, his thirty years of law-abiding conduct since his crime, his seventeen years of responsible, lawful firearm possession between 1987 and 2004, and his compliance with the 2004 amendment affirmatively demonstrated that he is not among the class of citizens who pose a threat to public peace and safety; and (4) based on the facts of plaintiff's crime, his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation as applied to plaintiff, the 2004 version of N.C.G.S. § 14-451.1 is an unreasonable regulation not fairly related to the preservation of public peace and safety. N.C. Const. art. I, § 30.

Justice HUDSON concurs in result only.

Chief Justice PARKER dissenting.

Justice TIMMONS-GOODSON dissenting.

**BRITT v. STATE**

[363 N.C. 546 (2009)]

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 185 N.C. App. 610, 649 S.E.2d 402 (2007), affirming an order granting summary judgment for defendant and denying summary judgment for plaintiff entered 31 March 2006 by Judge Michael R. Morgan in Superior Court, Wake County. Heard in the Supreme Court 5 May 2008.

*Dan L. Hardway Law Office, by Dan L. Hardway, for plaintiff-appellant.*

*Roy Cooper, Attorney General, by John J. Aldridge, III, Special Deputy Attorney General, for defendant-appellee.*

BRADY, Justice.

This case presents an as-applied challenge to the constitutionality of the 2004 amendment to N.C.G.S. § 14-415.1 that makes it "unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm." We determine that N.C.G.S. § 14-415.1 is unconstitutional as applied to plaintiff and reverse the decision of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1979 plaintiff Barney Britt pleaded guilty to felony possession with intent to sell and deliver the controlled substance methaqualone. Plaintiff's crime was nonviolent and did not involve the use of a firearm. Plaintiff was sentenced to two years in the North Carolina Department of Correction, with four months active imprisonment and the remainder suspended for two years, during which plaintiff was on supervised probation. He completed his probation in 1982, and in 1987 his civil rights were fully restored by operation of law, including his right to possess a firearm. At that time, N.C.G.S. § 14-415.1 only prohibited the possession of "any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches" by persons convicted of certain felonies, mostly of a violent or rebellious nature, "within five years from the date of such conviction, or unconditional discharge from a correctional institution, or termination of a suspended sentence, probation, or parole upon such conviction, whichever is later." Act of June 26, 1975, ch. 870, sec. 1, 1975 N.C. Sess. Laws 1273.

Subsequently, in 1995 the General Assembly amended N.C.G.S. § 14-415.1 to prohibit the possession of such firearms by all persons convicted of any felony, without regard to the date of conviction or

the completion of the defendant's sentence. Act of July 26, 1995, ch. 487, sec. 3, 1995 N.C. Sess. Laws 1414, 1417. The 1995 amendment did not change the previous provision in N.C.G.S. § 14-415.1 stating that "nothing [therein] would prohibit the right of any person to have possession of a firearm within his own house or on his lawful place of business." However, in 2004 the General Assembly amended N.C.G.S. § 14-415.1 to extend the prohibition on possession to *all* firearms by any person convicted of any felony, even within the convicted felon's own home and place of business. Act of July 15, 2004, ch. 186, sec. 14.1, 2004 N.C. Sess. Laws 716, 737.[1]

Following passage of this amendment, plaintiff had a discussion with the Sheriff of Wake County, who concluded that possession of a firearm by plaintiff would violate the statute as amended in 2004. Plaintiff thereafter divested himself of all firearms, including his sporting rifles and shotguns that he used for game hunting on his own land. In the thirty years since plaintiff's conviction of a nonviolent crime he has not been charged with any other crime nor is there any evidence that he has misused a firearm in any way. Furthermore, no determination has been made by any agency or court that plaintiff is violent, potentially dangerous, or is more likely than the general public to commit a crime involving a firearm.

On 20 September 2005, plaintiff initiated a civil action against the State of North Carolina, alleging that N.C.G.S. § 14-415.1 as amended

---

1. This statute was later amended in 2006 to exempt "antique firearm[s]," as defined in N.C.G.S. § 14-409.11, from its provisions. N.C.G.S. § 14-409.11 provides:

   (a) The term "antique firearm" means any of the following:

       (1) Any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured on or before 1898.

       (2) Any replica of any firearm described in subdivision (1) of this subsection if the replica is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition.

       (3) Any muzzle loading rifle, muzzle loading shotgun, or muzzle loading pistol, which is designed to use black powder substitute, and which cannot use fixed ammunition.

   (b) For purposes of this section, the term "antique firearm" shall not include any weapon which:

       (1) Incorporates a firearm frame or receiver.

       (2) Is converted into a muzzle loading weapon.

       (3) Is a muzzle loading weapon that can be readily converted to fire fixed ammunition by replacing the barrel, bolt, breechblock, or any combination thereof.

The 2006 amendment to N.C.G.S. § 14-415.1 is not before the Court.

BRITT v. STATE

[363 N.C. 546 (2009)]

violates multiple rights he holds under the United States and North Carolina Constitutions. On 31 March 2006, the trial court granted the State's motion for summary judgment, holding that the amended statute is rationally related to a legitimate government interest and is not an unconstitutional ex post facto law or bill of attainder. Plaintiff appealed to the Court of Appeals, and a majority of that court agreed with the trial court that plaintiff's rights had not been violated. The dissent at the Court of Appeals would have held that the 2004 amendment amounted to an ex post facto law and violated plaintiff's rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. On 24 March 2009, this Court retained plaintiff's notice of appeal based upon a substantial constitutional question as to the following issue only: "Whether the application of the 2004 amendment to N.C.G.S. § 14-415.1 to plaintiff violates his rights under N.C. Const. art. I, § 30." Because we agree with plaintiff that the application of N.C.G.S. § 14-415.1 to him violates Article I, Section 30 of the North Carolina Constitution, it is unnecessary for us to address any of plaintiff's remaining arguments, and we express no opinion on their merit.

## ANALYSIS

Article I, Section 30 of the North Carolina Constitution provides, in pertinent part: "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed." This Court has held that regulation of the right to bear arms is a proper exercise of the General Assembly's police power, but that any regulation must be at least "reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety." *State v. Dawson*, 272 N.C. 535, 547, 159 S.E.2d 1, 10 (1968) (quoting with approval *State v. Kerner*, 181 N.C. 574, 579, 107 S.E. 222, 226 (1921) (Allen, J., concurring)). Accordingly, this Court must determine whether, as applied to plaintiff, N.C.G.S. § 14-415.1 is a reasonable regulation.[2]

Plaintiff pleaded guilty to one felony count of possession with intent to sell and deliver a controlled substance in 1979. The State does not argue that any aspect of plaintiff's crime involved violence or the threat of violence. Plaintiff completed his sentence without

---

2. Because we hold that application of N.C.G.S. § 14-415.1 to plaintiff is not a reasonable regulation, we need not address plaintiff's argument that the right to keep and bear arms is a fundamental right entitled to a higher level of scrutiny.

incident in 1982. Plaintiff's right to possess firearms was restored in 1987. No evidence has been presented which would indicate that plaintiff is dangerous or has ever misused firearms, either before his crime or in the seventeen years between restoration of his rights and adoption of N.C.G.S. § 14-415.1's complete ban on any possession of a firearm by him. Plaintiff sought out advice from his local Sheriff following the amendment of N.C.G.S. § 14-415.1 and willingly gave up his weapons when informed that possession would presumably violate the statute. Plaintiff, through his uncontested lifelong nonviolence towards other citizens, his thirty years of law-abiding conduct since his crime, his seventeen years of responsible, lawful firearm possession between 1987 and 2004, and his assiduous and proactive compliance with the 2004 amendment, has affirmatively demonstrated that he is not among the class of citizens who pose a threat to public peace and safety. Moreover, the nature of the 2004 amendment is relevant. The statute functioned as a total and permanent prohibition on possession of any type of firearm in any location. *See* N.C.G.S. § 14-415.1 (2004).

Based on the facts of plaintiff's crime, his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation, as applied to plaintiff, the 2004 version of N.C.G.S. § 14-451.1 is an unreasonable regulation, not fairly related to the preservation of public peace and safety. In particular, it is unreasonable to assert that a nonviolent citizen who has responsibly, safely, and legally owned and used firearms for seventeen years is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety.

We conclude that N.C.G.S. § 14-415.1 is an unconstitutional violation of Article I, Section 30 of the North Carolina Constitution as applied to this plaintiff. As discussed above, pursuant to N.C.G.S. § 14-415.1, the State unreasonably divested plaintiff of his right to own a firearm. Such action violates plaintiff's right to keep and bear arms under Article I, Section 30 of the North Carolina Constitution. For that reason, we reverse the decision of the Court of Appeals to the extent that court determined N.C.G.S. § 14-415.1 can be constitutionally applied to plaintiff. This case is remanded to the Court of Appeals for further remand to the Superior Court, Wake County, for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Justice HUDSON concurs in the result only.

Chief Justice PARKER dissenting.

In my view N.C.G.S. § 14-415.1 as applied to plaintiff does not violate Article I, Section 30 of the North Carolina Constitution. Accordingly, I respectfully dissent.

Justice TIMMONS-GOODSON dissenting.

Because the majority has crafted an individualized exception for a sympathetic plaintiff, thereby placing North Carolina in the unique position of being the first jurisdiction, either federal or state, to hold that the inherent police power of the State must yield to a convicted felon's right to own a firearm, I respectfully dissent. Plaintiff's right to possess a firearm is not absolute, but subject to regulation. The Felony Firearms Act at issue is a reasonable regulation of the right to bear arms, both facially and as applied to plaintiff.

I note initially that "there is a strong presumption that enactments of the General Assembly are constitutional." *Town of Spruce Pine v. Avery Cty.*, 346 N.C. 787, 792, 488 S.E.2d 144, 147 (1997) (citing *Wayne Cty. Citizens Ass'n for Better Tax Control v. Wayne Cty. Bd. of Comm'rs*, 328 N.C. 24, 399 S.E.2d 311 (1991). Moreover, it is well settled that " '[a]cting for the public good, the state, in the exercise of its police power, may impose reasonable restrictions upon the natural and constitutional rights of its citizens.' " *In re Moore*, 289 N.C. 95, 103, 221 S.E.2d 307, 312 (1976) (quoting *In re Cavitt*, 182 Neb. 712, 715, 157 N.W.2d 171, 175 (1968)). Indeed, this Court recently noted that the State may properly exercise its police power to enact laws protecting or promoting the safety and general welfare of society. *Standley v. Town of Woodfin*, 362 N.C. 328, 333, 661 S.E.2d 728, 731 (2008). With regard to the right to bear arms, this Court has "consistently pointed out that the right of individuals to bear arms is not absolute, but is subject to regulation." *State v. Dawson*, 272 N.C. 535, 546, 159 S.E.2d 1, 9 (1968). To pass constitutional muster, the regulation must be (1) reasonable; and (2) related to preserving public peace and safety. *See id.* at 546-47, 159 S.E.2d at 9-10 (citing *State v. Kerner*, 181 N.C. 574, 579, 107 S.E. 222, 226 (1921) (Allen, J., concurring), for the proposition that the right to bear arms is subject to regulation by the General Assembly in the exercise of its inherent police power, but the regulation must be reasonable and related to the preservation of public peace and safety).

In addition to regulating the place and manner in which an individual may exercise his right to bear arms, the General Assembly may

**BRITT v. STATE**

[363 N.C. 546 (2009)]

also properly regulate—to the point of absolute restriction—certain *classes* of persons reasonably deemed by the legislature to pose a threat to public peace and safety.[3] *See District of Columbia v. Heller,* 554 U.S. ——, 171 L. Ed. 2d 637, 678 (2008) (affirming that the "longstanding prohibitions on the possession of firearms by felons and the mentally ill" survive Second Amendment scrutiny); *United States v. Emerson,* 270 F.3d 203, 261 (5th Cir. 2001) (stating that "it is clear that felons, infants, and those of unsound mind may be prohibited from possessing firearms"), *cert. denied,* 536 U.S. 907, 153 L. Ed. 2d 184 (2002); *cf. In re Moore,* 289 N.C. at 102-03, 221 S.E.2d at 311-12 (stating that, although the right to procreate is a fundamental right, the state may limit a class of citizens in this right). Thus, in addition to convicted felons, our statutes unequivocally prohibit incompetents, persons acquitted by reason of insanity of *any* crime (whether violent or non-violent), and persons subject to domestic violence orders from purchasing, owning, or possessing firearms. *See* N.C.G.S. §§ 14-269.8, 415.3 (2007). The majority's reasoning casts serious doubts upon the constitutionality of these statutes and invites individual challenges to not only the Felony Firearms Act, but these other statutory provisions as well.

The General Assembly's prohibition of firearm use by convicted felons is both reasonable and related to preserving public peace and safety. Felonies constitute our most serious offenses. One who has committed a felony has displayed a degree of lawlessness that makes it entirely reasonable for the legislature, concerned for the safety of the public it represents, to want to keep firearms out of the hands of such a person. As this Court stated in *State v. Jackson,* 353 N.C. 495, 546 S.E.2d 570 (2001):

> Just as there is heightened risk and public concern associated with firearms on educational property, which the legislature addressed through N.C.G.S. § 14-269.2, *there is also heightened risk and public concern associated with convicted felons possessing firearms,* which the legislature addressed through N.C.G.S. § 14-415.1. Both are exceptional situations, which have been addressed through dedicated statutory law.

*Id.* at 501, 546 S.E.2d at 573-74 (emphasis added); *see also Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 112 n.6, 74 L. Ed. 2d 845, 854

---

3. Plaintiff has not brought an equal protection challenge, nor has the majority addressed any equal protection concerns with the Felony Firearms Act. I therefore do not comment upon this issue.

n.6 (1983) (stating that Congress's intent in enacting 18 U.S.C. 922(g), which prohibits firearm possession by convicted felons, was to "keep firearms out of the hands of presumptively risky people"), *superseded on other grounds by statute*, Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449, *as recognized in Logan v. United States*, 552 U.S. 23, ——, 169 L. Ed. 2d 432, 438 (2007). The Felony Firearms Act is moreover limited in scope: the prohibition on firearm possession does not apply to *all* persons convicted of crimes—only those convicted of our most serious offenses, felonies. And convicted felons are not barred from possessing *all* weapons— only firearms.

The General Assembly, acting upon its compelling interest in the public welfare and safety, determined that, like the mentally insane, those convicted of felonies pose an unacceptable risk with regard to firearm possession. In so doing, the legislature has properly fulfilled its duty to reasonably regulate firearms: " 'The preservation of the public peace, and the protection of the people against violence, are constitutional duties of the legislature, and the guarantee of the right to keep and bear arms is to be understood and construed in connection and in harmony, with these constitutional duties.' " *Dawson*, 272 N.C. at 548, 159 S.E.2d at 11 (quoting *Hill v. State*, 53 Ga. 472, 477 (1874)). Thus, because I conclude that N.C.G.S. § 14-415.1 is reasonable and related to preserving public peace and safety, both in general and to Mr. Britt in particular as a convicted drug offender, the Felony Firearms Act is constitutional on its face and as applied to Mr. Britt.

This case is difficult and poses a temptation for the Court to depart from established case law in order to accommodate Mr. Britt. However, as the Chief Justice of the United States Supreme Court recently articulated:

> Extreme cases often test the bounds of established legal principles. There is a cost to yielding to the desire to correct the extreme case, rather than adhering to the legal principle. That cost has been demonstrated so often that it is captured in a legal aphorism: "Hard cases make bad law."

*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. ——, ——, 173 L. Ed. 2d 1208, 1232 (2009) (Roberts, C.J., dissenting). Although Mr. Britt may be a sympathetic plaintiff, in that he made a huge mistake early in his life, he is nevertheless a convicted drug offender and a felon and as such, belongs to a class of persons deemed by the

General Assembly and recognized by this Court to pose "heightened risk and public concern" with regard to firearm possession. Other state supreme courts have avoided the temptation to craft individualized exceptions for particular plaintiffs. *See State v. Smith*, 132 N.H. 756, 758, 571 A.2d 279, 281 (1990) (holding that the state's felon-in-possession statute narrowly served a significant governmental interest in protecting the general public and was therefore constitutional under the New Hampshire Constitution, even though the New Hampshire Supreme Court recognized that some felons falling within the statute's reach were not potentially dangerous). Today's decision opens the floodgates wide before an inevitable wave of individual challenges to not only the Felony Firearms Act, but to our statutory provisions prohibiting firearm possession by incompetents and the mentally insane. The majority has not cited any direct authority from this Court or any other jurisdiction in support of its position that the legislature may not prohibit convicted felons like Mr. Britt from possessing firearms. Plaintiff does not cite any such case, and I have found none, all authority being to the contrary.

Although the majority stands up for Mr. Britt and other convicted felons who will now undoubtedly seek judicial exemption from N.C.G.S. § 14-415.1, this is a policy matter and determination best left to the executive or legislative branches. Mr. Britt may seek relief from the General Assembly through contact with individual legislators or from the Governor by way of a conditional or unconditional pardon. *See* N.C. Const. art. III, § 5, cl. 6; N.C.G.S. §§ 13-1 to 13-4. (2007). The majority resists judicial restraint in an effort to fashion an individual exception for Mr. Britt. I believe this Court should properly resist such temptation and affirm the decision of the Court of Appeals.