STATE OF NORTH CAROLINA v. DOUGLAS DWAYNE WHITAKER

No. 21A10

(Filed 8 October 2010)

**Firearms and Other Weapons— 2004 amendment to N.C.G.S. § 14-415.1—prohibition on convicted felons from possessing firearm—not ex post facto law or bill of attainder**

The 2004 amendment to N.C.G.S. § 14-415.1, which prohibits convicted felons from possessing any firearm in any location, does not violate state and federal constitutional protections

against *ex post facto* laws, nor is it an unconstitutional bill of attainder, because: (1) it is not an unconstitutional *ex post facto* law since the General Assembly's purpose in enacting the 2004 amendment to N.C.G.S. § 14-415.1 was to establish a civil regulatory measure and its effect does not render it punitive in nature; and (2) it is not a bill of attainder since it does not impose punishment on a select group of persons without a judicial trial, and even if the N.C.G.S. § 14-415.1 prohibition on possession of firearms by felons did operate as a punishment, it is unlikely that felons would be considered a group protected under the Bill of Attainder Clause since laws regulating the conduct of convicted felons have long been upheld as valid exercises of the legislative function.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 201 N.C. App. ——, 689 S.E.2d 395 (2009), reversing in part and finding no error in part in judgments entered 10 June 2008 by Judge Lindsay R. Davis, Jr. in Superior Court, Moore County. Heard in the Supreme Court 7 September 2010.

*Roy Cooper, Attorney General, by E. Michael Heavner, Assistant Attorney General, for the State.*

*Law Office of Bruce T. Cunningham, Jr., by Bruce T. Cunningham, Jr. and Amanda S. Zimmer, for defendant-appellant.*

BRADY, Justice.

This case requires us to determine whether the 2004 amendment to N.C.G.S. § 14-415.1, which prohibits convicted felons from possessing any firearm in any location, violates state and federal constitutional protections against ex post facto laws or is an unconstitutional bill of attainder. We hold that the amended statute is not an impermissible ex post facto law or bill of attainder. Accordingly, we affirm the decision of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Douglas Dwayne Whitaker, a convicted felon with an extensive criminal record, was informed by Detective Sergeant George K. Dennis of the Moore County Sheriff's Office in June of 2005 that he could no longer possess the firearms currently in his residence because of a recent change in the law that bans felons from

possessing any firearm. Defendant was also advised on 11 April 2006 by his probation and parole ·officer, Connie Burns, that according to the rules and regulations of his probation, he could not possess firearms. Despite these warnings, defendant failed to divest himself of his firearms, and on 27 April 2006, a search of defendant's bedroom revealed four rifles and seven shotguns, a total of eleven firearms. Defendant was not arrested and charged at that time, but voluntarily surrendered to authorities on 8 May 2006, when he was charged with eleven counts of possession of a firearm by a felon in violation of N.C.G.S. § 14-415.1.

Following the presentation of evidence and instruction by the trial court, the jury returned verdicts of guilty on all eleven charges. The trial court entered judgment on one count, sentencing defendant, who had a prior record level of V, to 18 to 22 months of imprisonment. The trial court arrested judgment on the other ten counts. Defendant appealed to the Court of Appeals, which in a divided decision reversed the ten convictions on which judgment had been arrested, but found no error in defendant's conviction upon which he was sentenced. *State v. Whitaker,* —— N.C. App. ——, ——, 689 S.E.2d 395, 406 (2009). The Court of Appeals held, *inter alia,* that the amended N.C.G.S. § 14-415.1 is not an ex post facto law or bill of attainder. *Id.* at ——, 689 S.E.2d at 405. An opinion concurring in part and dissenting in part would have held that the amended statute is an unconstitutional ex post facto law and an impermissible bill of attainder. *Id.* at ——, 689 S.E.2d at 407-08 (Elmore, J., concurring in part and dissenting in part). Defendant appealed as of right to this Court based on the dissenting opinion below.

## ANALYSIS

### A. Ex Post Facto

The United States and North Carolina Constitutions preserve the right of the people to be free from ex post facto laws. The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. Moreover, the North Carolina Constitution states: "Retrospective laws, punishing acts committed before the existence of such laws and by them only declared criminal, are oppressive, unjust, and incompatible with liberty, and therefore no ex post facto law shall be enacted." N.C. Const. art. I § 16. This Court has articulated that "both the federal and state constitutional *ex post facto* provisions are evaluated under the same definition." *State v. Wiley,* 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002) (citation omitted), *cert. denied,* 537 U.S. 1117 (2003).

**STATE v. WHITAKER**

[364 N.C. 404 (2010)]

[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.

*Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925).

Defendant asserts that the 2004 amendment to N.C.G.S. § 14-415.1 is an unconstitutional ex post facto law. In 1975 our General Statutes prohibited

the possession of "any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches" by persons convicted of certain felonies, mostly of a violent or rebellious nature, "within five years from the date of such conviction, or unconditional discharge from a correctional institution, or termination of a suspended sentence, probation, or parole upon such conviction, whichever is later." Act of June 26, 1975, ch. 870, sec. 1, 1975 N.C. Sess. Laws 1273.

Subsequently, in 1995 the General Assembly amended N.C.G.S. § 14-415.1 to prohibit the possession of such firearms by all persons convicted of any felony, without regard to the date of conviction or the completion of the defendant's sentence. Act of July 26, 1995, ch. 487, sec. 3, 1995 N.C. Sess. Laws 1414, 1417. The 1995 amendment did not change the previous provision in N.C.G.S. § 14-415.1 stating that "nothing [therein] would prohibit the right of any person to have possession of a firearm within his own house or on his lawful place of business." However, in 2004 the General Assembly amended N.C.G.S. § 14-415.1 to extend the prohibition on possession to *all* firearms by any person convicted of any felony, even within the convicted felon's own home and place of business. Act of July 15, 2004, ch. 186, sec. 14.1, 2004 N.C. Sess. Laws 716, 737.

*Britt v. State*, 363 N.C. 546, 547-48, 681 S.E.2d 320, 321 (2009).[1] It should be noted that the trial court's judgment against defendant was

---

1. N.C.G.S. § 14-415.1 was amended in 2006 to exempt "antique firearm[s]," as defined in N.C.G.S. § 14-409.11, from its provisions. N.C.G.S. § 14-409.11 provides:

(a) The term "antique firearm" means any of the following:

(1) Any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured on or before 1898.

not for any prior act but was consistent with defendant's possession of a firearm in 2006, over two years after N.C.G.S. § 14-415.1 was amended to prohibit such action. In the strictest sense, defendant's conviction is for an offense that he committed after his actions were deemed criminal, namely the possession of any firearm by a felon. The question then becomes whether the 2004 amendment to N.C.G.S. § 14-415.1 is an ex post facto law, not because it imposes punishment for future acts, but because it prohibits the possession of firearms by a convicted felon, which defendant asserts operates as a form of enhanced punishment for his prior felonies.[2]

Defendant does not assert, and we do not hold, that the General Assembly's express or implied intent was to impose further punishment upon convicted felons by prohibiting them from possessing firearms. *See Smith v. Doe*, 538 U.S. 84, 92 (2003) (stating that an ex post facto analysis begins by considering whether "the intention of the legislature was to impose punishment" (citing *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997))). Thus, we move to the second phase of ex post facto analysis, which requires us to determine whether the 2004 amendment to N.C.G.S. § 14-415.1 is "so punitive either in purpose or effect as to negate" the legislature's civil intent.

---

(2) Any replica of any firearm described in subdivision (1) of this subsection if the replica is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition.

(3) Any muzzle loading rifle, muzzle loading shotgun, or muzzle loading pistol, which is designed to use black powder substitute, and which cannot use fixed ammunition.

(b) For purposes of this section, the term "antique firearm" shall not include any weapon which:

(1) Incorporates a firearm frame or receiver.

(2) Is converted into a muzzle loading weapon.

(3) Is a muzzle loading weapon that can be readily converted to fire fixed ammunition by replacing the barrel, bolt, breechblock, or any combination thereof.

Additionally, the General Assembly passed a new statute in 2010 to allow certain convicted felons to have their right to bear arms restored. Act of July 6, 2010, ch. 108, sec. 1, 2010 N.C. Sess. Laws ——, —— (codified at N.C.G.S. § 15-415.4).

2. The indictments charging defendant with a violation of N.C.G.S. § 14-415.1 list his 1988 conviction for felony possession of cocaine as the underlying felony prohibiting his possession of firearms. The indictment did not allege that defendant's 2005 conviction of felony possession of cocaine was an underlying felony supporting the charge. The date of defendant's 2005 felony offense was 27 June 2005, which was *after* the 1 December 2004 effective date of amended N.C.G.S. § 14-415.1.

STATE v. WHITAKER

[364 N.C. 404 (2010)]

*Id.* at 92 (quoting *Hendricks,* 521 U.S. at 361) (internal quotation marks omitted). The Supreme Court of the United States has laid out several factors that are instructive but not exhaustive.

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment[,] whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry . . . .

*Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69 (1963) (footnotes omitted). Of these factors, defendant argues that the statute is not rationally related to the legislature's nonpunitive intent and that the scope of the 2004 amendment is excessive when compared with the purpose of protecting public safety. We disagree.

It is clear that the General Assembly's nonpunitive intent is to protect the public from future violent actions of those it has deemed by its classification of offenses to be either most dangerous or to have demonstrated a heightened disregard for the law. Thus, the question is whether prohibiting convicted felons from possessing firearms that do not fall under the definition of antique firearms is rationally connected to the purpose of public safety. The Supreme Court of the United States asserted that a legislature's "judgment that a convicted felon . . . is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational." *Lewis v. United States,* 445 U.S. 55, 67 (1980) (discussing the federal ban on possession of firearms by convicted felons in the context of the equal protection clause). Moreover, the Court emphasized that questioning the legislature's judgment on this issue "seems plainly inconsistent with the deference that a reviewing court should give to a legislative determination that, in essence, predicts a potential for future criminal behavior." *Id.* at n.9. Moreover, the Supreme Court of the United States has described bans on possession of firearms by felons as regulatory action. *See District of Columbia v. Heller,* 554 U.S. ——, ——, 128 S. Ct. 2783, 2817 n.26, 171 L. Ed. 2d 637, 678 n.26 (characterizing long-standing prohibitions such as the ban on possession of firearms by felons as "presumptively lawful regulatory measures").

Defendant asserts that the statute is not rationally connected to the nonpunitive purpose of the General Assembly because certain crimes that, in defendant's opinion, are more indicative of dangerousness are classified as misdemeanors rather than felonies. However, it is not the duty of, or within the province of, this Court to make criminal offense classifications. Our sole determination is whether there is a rational connection, not whether there is a "perfect fit," between the legislative goal and the means used to accomplish it. *Smith v. Doe*, 538 U.S. at 103 (stating that "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the non-punitive aims it seeks to advance"). Here the General Assembly determined that the best way to protect the public is to prohibit possession of firearms by those who have shown a heightened disregard for our laws and who often have a propensity for violence. "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* at 103-04.

Although defendant cites this Court's recent holding in *Britt v. State* as support for the alleged irrationality of N.C.G.S. § 14-415.1, the analysis in *Britt* focused on the plaintiff's right to keep and bear arms as preserved by the North Carolina Constitution. *See Britt*, 363 N.C. at 549, 681 S.E.2d at 322. In *Britt*, the plaintiff had pleaded guilty to a single nonviolent felony decades earlier. *Id.* In the case *sub judice* the Court of Appeals unanimously determined that defendant, who has multiple convictions over a lengthy period of time, is not entitled to relief under the North Carolina Constitution's right to keep and bear arms. —— N.C. App. at ——, 689 S.E.2d at 398-405 (majority); *Id.* at ——, 689 S.E.2d at 406-07 (Elmore, J., concurring in part and dissenting in part). This Court's decision in *Britt* is inapplicable to this case.

Defendant argues that the 2006 amendment exempting antique firearms as defined by N.C.G.S. § 14-409.11 from the provisions of N.C.G.S. § 14-415.1 demonstrates the General Assembly's irrationality in crafting the statute at issue. However, the General Assembly's decision to exempt antique firearms does not make an otherwise rational connection irrational. The exemption of antique firearms from the ban demonstrates that the General Assembly has determined that antique firearms would be less likely to be used in a crime. For example, the General Assembly could have rationally determined that the length of time it takes to load and reload a muzzle loader type of firearm lessens the danger that such a firearm would be used in the

commission of a crime and thus, it provided an exception for those weapons in N.C.G.S. § 14-409.11(a)(3). Section 14-415.1 is rationally connected to the nonpunitive purpose of public safety.

Defendant also argues that N.C.G.S. § 14-415.1 is excessive in light of its purpose to protect public safety. We disagree.

Defendant first argues that N.C.G.S. § 14-415.1 is excessive because it does not provide an exemption for the possession of a firearm in the home or business. To the contrary, the General Assembly could have rationally concluded that protection of the public should extend to individuals in a convicted felon's home or business. Domestic violence often occurs in the home, as do controlled substance transactions. It is not excessive for the General Assembly to attempt to accomplish its purpose of protecting the public by also attempting to protect those who reside, work, or do business with convicted felons.

Defendant also asserts that when applied to his case in particular, the law is excessive because the arms in his possession were not easily concealable and were located in his home, and defendant's prior convictions are for nonviolent crimes. Nonetheless, the record indicates that defendant has a lengthy and diverse criminal record. From 1984 to 2008, defendant has two convictions for possession of drug paraphernalia, two convictions of driving while impaired, two convictions for possession of cocaine, a conviction for selling or delivering cocaine, a conviction for taking indecent liberties with a child, a conviction for maintaining a place to keep controlled substances, and a misdemeanor conviction for possession of oxycodone, a controlled substance. It is certainly not excessive for defendant to be denied the further use of firearms following his repeated disregard for our criminal laws.

Because the General Assembly's purpose in enacting the 2004 amendment to N.C.G.S. § 14-415.1 was to establish a civil regulatory measure, and because the amended statute's effect does not render it punitive in nature, the amended N.C.G.S. § 14-415.1 is not an unconstitutional ex post facto law.

### B. Bill of Attainder

Defendant asserts that the 2004 amendment to N.C.G.S. § 14-415.1 also operates as an impermissible bill of attainder. Bills of attainder are prohibited by the United States Constitution: "No State shall . . . pass any bill of attainder." U.S. Const. art. I § 10, cl. 1.

A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977) (citations omitted). "In forbidding bills of attainder, the draftsmen of the Constitution sought to prohibit the ancient practice of the Parliament in England of punishing without trial 'specifically designated persons or groups.' " *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 847 (1984) (quoting *United States v. Brown*, 381 U.S. 437, 447 (1965)).

As we have already determined that the statute's prohibition of possession of firearms by felons does not operate as punishment, N.C.G.S. § 14-415.1 cannot be a bill of attainder. Any punishment defendant received pursuant to N.C.G.S. § 14-415.1 followed a judicial trial in which a jury determined defendant was a convicted felon and possessed a firearm in violation of the law. Moreover, the statute does not inflict punishment on those who have committed prior acts, but on those who commit the future act of possessing a firearm after having been convicted of a felony. Even if the N.C.G.S. § 14-415.1 prohibition on possession of firearms by felons did operate as a punishment, it is unlikely that felons would be considered a group protected under the Bill of Attainder Clause, as "[l]aws regulating the conduct of convicted felons have long been upheld as valid exercises of the legislative function." *United States v. Donofrio*, 450 F.2d 1054, 1055-56 (5th Cir. 1971), *reversed and remanded on other grounds*, 450 F.2d 1054, 1056 (5th Cir. 1972) (per curiam). Because N.C.G.S. § 14-415.1 does not impose punishment on a selected group of persons without a judicial trial, it is not a bill of attainder.

## CONCLUSION

Because the 2004 amendment to N.C.G.S. § 14-415.1 neither operates as an ex post facto law nor is a bill of attainder, we affirm the decision of the Court of Appeals. The remaining issues addressed by the Court of Appeals are not before this Court and its decision as to these matters remains undisturbed.

AFFIRMED.