WALTER SUTTON BAYSDEN v. THE STATE OF NORTH CAROLINA

No. COA11-395

(Filed 15 November 2011)

**Constitutional Law—Second Amendment—Felony Firearms Act—unconstitutional as applied**

The trial court erred by granting summary judgment for the State and denying plaintiff's "as applied" constitutional challenge to N.C.G.S. § 14-415.1, the Felony Firearms Act (Act). Although plaintiff had been convicted in Virginia in the 1970s of possessing a sawed-off shotgun and of the felonious sale of marijuana, the circumstances of neither involved any sort of violent conduct and plaintiff has been a law abiding citizen ever since; he was in

---

BAYSDEN v. STATE OF N.C.

[217 N.C. App. 20 (2011)]

essentially the same position as the plaintiff in *Britt v. State*, 363 N.C. 546. The fact that the Act has been amended since *Britt* to allow exception or possible relief was not particularly relevant to the constitutional analysis because there was no statutory mechanism which plaintiff could use to seek relief given his particular situation. The fact that plaintiff had two rather than one prior felony conviction did not demonstrate the appropriateness of a finding for the State.

Judge BEASLEY dissenting.

Appeal by plaintiff from order entered 11 February 2011 by Judge Lucy N. Inman in Wake County Superior Court. Heard in the Court of Appeals 28 September 2011.

*Dan L. Hardway Law Office, by Dan L. Hardway, for Plaintiff-Appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General John J. Aldridge, III, for the State.*

ERVIN, Judge.

Plaintiff Walter Sutton Baysden appeals from an order rejecting his challenge to the constitutionality of the Felony Firearms Act, N.C. Gen. Stat. § 14-415.1 *et seq.*, both facially and as applied to the facts surrounding his personal situation. More specifically, Plaintiff argues that the Felony Firearms Act violates his right to bear arms as guaranteed by the Second Amendment to the United States Constitution as made applicable to the States by the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, Sections 19 and 30 of the North Carolina Constitution; the prohibition against the enactment of *ex post facto* laws and bills of attainder set out in Article I, Section 10 of the United States Constitution and Article I, Section 16 of the North Carolina Constitution; and the equal protection guarantees afforded by the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. After careful consideration of Plaintiff's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that the trial court's judgment should be reversed and that this case should be remanded to the Wake County Superior Court for the entry of summary judgment in favor of Plaintiff.

BAYSDEN v. STATE OF N.C.

[217 N.C. App. 20 (2011)]

## I. Factual Background

### A. Substantive Facts

On 8 November 1972, Plaintiff was convicted in Virginia Beach, Virginia, for the felonious possession of an unlawful weapon (a sawed-off shotgun). At that time, Plaintiff was 22 years old. Plaintiff had discovered the shotgun, which was "rusted up and inoperable," under a house on the beach. Plaintiff never engaged in any violent conduct while in possession of the sawed-off shotgun.

On 26 April 1977, Plaintiff was convicted for the felonious sale of marijuana in Norfolk, Virginia. Although Plaintiff admitted having experimented with marijuana when he was young, he denied having ever sold marijuana or having used or possessed illegal drugs since 1977.

In 1982, the Governor of Virginia restored the firearms-related rights that Plaintiff had forfeited as a result of these two convictions. A year later, the Bureau of Alcohol, Tobacco, and Firearms of the United States Department of the Treasury granted Plaintiff's application for relief from federal firearms disabilities pursuant to 18 U.S.C. § 925(c).

Plaintiff has resided in a house that he owns with his wife of 32 years in Onslow County since 1995. Since his conviction for selling marijuana in 1977, Plaintiff has not been charged with or convicted of any criminal offense other than minor traffic violations. In addition, Plaintiff has never been accused of engaging in acts of domestic violence or been the subject of either a protective order issued pursuant to Chapter 50B of the General Statutes or a no-contact order issued pursuant to Chapter 50C of the General Statutes.

Plaintiff was employed by the United States Department of Defense from 1981 until his retirement in 2007. During the course of his employment by the Department of Defense, Plaintiff maintained aircraft for the United States Navy. While employed by the Department of Defense, Plaintiff passed the background checks required for him to obtain necessary government security clearances and was decorated for exemplary service during a tour of duty in Iraq.

After the restoration of his right to use and possess firearms, Plaintiff owned firearms, which he used for self-defense purposes. In addition, Plaintiff collected guns and frequently participated in shooting matches. Plaintiff's possession and use of firearms after the restoration of his gun-related rights in 1983 never resulted in a complaint of any nature.

Upon moving to North Carolina in 1995, Plaintiff limited his possession of firearms to his home and business premises, consistent with North Carolina law as it existed at that time. After the enactment of the 2004 amendments to the Felony Firearms Act, which precluded convicted felons from possessing firearms at any location and under any set of circumstances, Plaintiff "dispossessed himself of all firearms." Plaintiff has never been charged with violating North Carolina's firearms statutes.

## B. Procedural History

On 6 May 2010, Plaintiff filed a complaint seeking a declaration that the Felony Firearms Act is unconstitutional, both facially and as applied to him. On 1 June 2010, the State filed an answer denying the material allegations of Plaintiff's complaint. On 23 August 2010, after obtaining leave of court to do so, Plaintiff filed an amended complaint which reflected the 2010 amendments to the Felony Firearms Act enacted by the General Assembly and reiterated his request for a declaration that the Felony Firearms Act, as amended, violated his federal and state constitutional rights, both facially and as applied. On 13 September 2010, the State filed an amended answer denying the material allegations of Plaintiff's amended complaint.

On the same date, the State filed a motion seeking, alternatively, the dismissal of Plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), or the entry of summary judgment in the State's favor pursuant to N.C. Gen. Stat. § 1A-1, Rule 56. On 13 October 2010, Plaintiff filed a motion seeking the entry of summary judgment in his favor. After providing the parties with an opportunity to be heard at the 5 January 2011 civil session of the Wake County Superior Court, the trial court entered an order denying the State's dismissal motion and Plaintiff's summary judgment motion and granting the State's summary judgment motion on 11 February 2011. Defendant noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

## A. Standard of Review

A motion for summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A defendant may

show entitlement to summary judgment by: '(1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim.' " *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 166, 684 S.E.2d 41, 46 (2009) (quoting *James v. Clark*, 118 N.C. App. 178, 180-81, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995)). As a result, "[a]n appeal from an order granting summary judgment solely raises issues of whether on the face of the record there is any genuine issue of material fact, and whether the prevailing party is entitled to judgment as a matter of law." *Carcano*, 200 N.C. App. at 166, 684 S.E.2d at 46 (citing *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 352, 595 S.E.2d 778, 781 (2004)). A trial court's order granting or denying summary judgment is reviewed by this Court on a *de novo* basis, so that we " 'consider[] the matter anew and freely substitute[our] own judgment' for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 342, 678 S.E.2d 351, 354 (2009) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). As a result of the fact that, while "the parties disagree on the legal significance of the established facts, the facts themselves are not in dispute[,]" *Musi v. Town of Shallotte*, 200 N.C. App. 379, 381, 684 S.E.2d 892, 894 (2009) (quoting *Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 359, 558 S.E.2d 504, 507, *disc. review denied*, 356 N.C. 159, 568 S.E.2d 186 (2002)), "the only issue that we need to address is the extent, if any, to which the trial court erred," *Smith v. County of Durham*, ___ N.C. App. ___, ___, 714 S.E.2d 849, 855 (2011), by concluding that the Felony Firearms Act did not violate any of Plaintiff's state or federal constitutional rights, either facially or as applied to a person in Plaintiff's position.

## B. Substantive Legal Analysis

According to Article I, Section 30 of the North Carolina Constitution:

A well-regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed; and, as standing armies in time of peace are dangerous to liberty, they shall not be maintained, and the military shall be kept under strict subordination to, and governed by, the civil power. Nothing herein shall justify the practice of carrying con-

cealed weapons or prevent the General Assembly from enacting penal statutes against that practice.

As a result of the fact that "North Carolina decisions have interpreted our Constitution as guaranteeing the right to bear arms to the people in [both] a collective sense . . . and also to individuals" and that "the right of individuals to bear arms is not absolute, but is subject to regulation," *State v. Dawson*, 272 N.C. 535, 546, 159 S.E.2d 1, 10 (1968) (citing *Nunn v. State*, 1 Ga. 243 (1846)), we are required to "determine whether, as applied to [P]laintiff, N.C. [Gen. Stat.] § 14-415.1 is a reasonable regulation." *Britt v. State*, 363 N.C. 546, 549, 681 S.E.2d 320, 322 (2009).

The legal principles governing "as-applied" constitutional challenges to the Felony Firearms Act have been enunciated in recent decisions of the Supreme Court and this Court. "Based on the facts of plaintiff's crime, his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation, as applied to plaintiff, the 2004 version of N.C. [Gen. Stat.] § 14-[415].1 is an unreasonable regulation, not fairly related to the preservation of public peace and safety." *Britt*, 363 N.C. at 550, 681 S.E.2d at 323. Put another way, "it is unreasonable to assert that a nonviolent citizen who has responsibly, safely, and legally owned and used firearms for seventeen years is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety." *Id.* In considering an "as-applied" challenge to the application of the Felony Firearms Act to a specific individual, our analysis must "focus[] on five factors . . . : (1) the type of felony convictions, particularly whether they 'involved violence or the threat of violence,' (2) the remoteness in time of the felony convictions[,] (3) the felon's history of 'law-abiding conduct since [the] crime,' (4) the felon's history of 'responsible, lawful firearm possession' during a time period when possession of firearms was not prohibited, and (5) the felon's 'assiduous and proactive compliance with the 2004 amendment.' " *State v. Whitaker*, 201 N.C. App. 190, 205, 689 S.E.2d 395, 404 (2009) (quoting Britt, 363 N.C. at 550, 681 S.E.2d at 323), *aff'd on other grounds*, 364 N.C. 404, 700 S.E.2d 215 (2010). As a result of the fact that the trial court entered a detailed order spelling out the information disclosed by the undisputed record evidence, we clearly have a sufficient evidentiary record upon which to evaluate the validity of Plaintiff's claim, *State v. Buddington*, ___ N.C. App. ___, ___, 707 S.E.2d 655, 657 (2011) (stating that, "[i]n order for [a party] to prevail [based upon]

an as-applied constitutional challenge to N.C. Gen. Stat. § 14-415.1, he must present evidence which would allow the trial court to make findings of fact" relating to the factors enunciated in the Supreme Court's decision in *Britt* and this Court's decision in *Whitaker*), and will proceed to address Plaintiff's claim on the merits.

The analysis outlined in *Britt* and *Whitaker* is relatively straight-forward. Nothing in either *Britt* or *Whitaker* indicates that any one of the five factors listed above is determinative. Instead, each of the five factors is a consideration that must be taken into account in making the required constitutional determination. As a result, the "five factor" analysis set out in *Britt* and *Whitaker* is not a hard and fast set of rules; instead, the five factors constitute a set of criteria that must be considered in determining the validity of a litigant's "as-applied" challenge to the constitutionality of the Felony Firearms Act.

After carefully examining the undisputed evidentiary materials in the record, we believe that Plaintiff is in essentially the same position as Mr. Britt. As the record clearly reflects, Plaintiff was convicted of two felony offenses, neither of which involved any sort of violent con-duct, between three and four decades ago. Since that time, Plaintiff has been a law-abiding citizen. After having had his firearms-related rights restored, Plaintiff used such weapons in a safe and lawful man-ner from the date of restoration until he became subject to the prohi-bition worked by the 2004 amendment to the Felony Firearms Act on 1 December 2004. At that point, Plaintiff took action to ensure that he did not unlawfully possess any firearms and has "assiduously and proactively" complied with N.C. Gen. Stat. § 14-415.1 since that time. Instead of being criminally charged with having violated N.C. Gen. Stat. § 14-415.1, like Mr. Whitaker and Mr. Buddington, Plaintiff, like Mr. Britt, initiated the present declaratory judgment action for the purpose of obtaining a legal determination of the validity of his claim to have the constitutional right to possess firearms despite his prior felony convictions. As a result, we are unable to see any material dis-tinction between the facts at issue in the Supreme Court's decision in *Britt* and the facts at issue here.

The State, the trial court, and our dissenting colleague appear to conclude that Plaintiff's "as-applied" challenge should fail because (1) the 2010 amendments to the Felony Firearms Act expressly exclude Plaintiff from the class of individuals eligible to seek the restoration of their right to possess a firearm, (2) Plaintiff committed a "violent crime," and (3) Plaintiff has two, rather than one, prior felony convictions. We do not find this logic persuasive.

The fact that the Felony Firearms Act has been amended to allow "exception or possible relief from the statute's operation," *Britt*, 363 N.C. at 550, 681 S.E.2d at 323, since *Britt* is not particularly relevant to the required constitutional analysis. As was the case with respect to Mr. Britt at the time of the Supreme Court's decision, there is no statutory mechanism which Plaintiff can use to seek relief from the operation of N.C. Gen. Stat. § 14-415.1 given the facts surrounding his own peculiar situation. The enactment of an exception to the prohibition worked by N.C. Gen. Stat. § 14-415.1 that permits a certain group of persons to obtain restoration of the right to possess a firearm for which Plaintiff does not qualify[1] is not one of the five factors specified in *Britt* and *Whitaker*. Although the Supreme Court mentioned "the lack of any exception or possible relief from the statute's operation" in *Britt*, 363 N.C. at 550, 681 S.E.2d at 323, it appears to have done so for the purpose of justifying its decision to address Mr. Britt's "as-applied" constitutional challenge to N.C. Gen. Stat. § 14-415.1 on the merits rather than for the purpose of sending a signal to the General Assembly that the enactment of an amendment to the Felony Firearms Act allowing a person with a single non-violent felony conviction to seek the restoration of his or her state constitutional right to possess a firearm would insulate the relevant statutory provisions from subsequent "as-applied" constitutional challenges. At bottom, a decision to reject Plaintiff's claim based on the enactment of the 2010 amendment to the Felony Firearms Act would be inconsistent with the judiciary's obligation to make constitutional determinations. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60, 73 (1803) (stating that "[i]t is emphatically the province and duty of the judicial department to say what the law is"). As a result, the fact that there is no statutory mechanism which Plaintiff can utilize to seek relief from the prohibition on firearm possession worked by N.C. Gen. Stat. § 14-415.1 is, in actuality, a reason for considering Plaintiff's "as-applied" constitutional challenge to the Felony Firearms Act on the merits rather than a reason for upholding the existing statute as applied to Plaintiff.

---

1. Plaintiff is not eligible to seek the restoration of his right to possess a firearm pursuant to newly enacted N.C. Gen. Stat. § 14-415.4 because he has more than one prior felony conviction, N.C. Gen. Stat. § 14-415.4(d)(2), and because one of his prior convictions involved "the possession . . . of a firearm or other deadly weapon as an essential or nonessential element of the offense," N.C. Gen. Stat. § 14-415.4(a)(2)(b), a fact which precludes him from establishing that his prior conviction was for a non-violent felony as that term is used in the relevant statutory language. N.C. Gen. Stat. § 14-415.4(d)(2).

Secondly, neither of Plaintiff's convictions involved the commission of a "violent" crime as that expression is used in *Britt* and *Whitaker*[2]. According to the undisputed record evidence, Plaintiff was convicted for possessing an illegal sawed-off shotgun in 1972 and for selling marijuana in 1977. As the trial court noted, Defendant "offered no evidence disputing Plaintiff's" contention that the sawed-off shotgun in question was "found under a house on the beach, 'rusted up and inoperable,' with a firing pin that 'wouldn't move.'" In determining that one of Plaintiff's prior felony convictions involved a "violent crime," the trial court noted that the 2010 amendment to the Felony Firearms Act excludes any "offense that includes the possession . . . of a firearm or other deadly weapon as an essential or nonessential element," N.C. Gen. Stat. § 14-415.4(a)(2)(b), from the definition of a "nonviolent felony." We do not believe that these statutory definitions control our determination of whether Plaintiff's prior conviction for possessing a sawed-off shotgun constituted a "violent" felony conviction for purposes of the constitutional analysis required by *Britt* and *Whitaker*. Instead, we are of the opinion that the Supreme Court's references to Mr. Britt's "uncontested lifelong nonviolence towards other citizens," *Britt*, 363 N.C. at 550, 681 S.E.2d at 323, and the reiteration of similar language in *Whitaker* require us to focus on the litigant's actual conduct rather than upon the manner in which the General Assembly has categorized or defined certain offenses. As we have already noted, statutory definitions adopted by the General Assembly are simply not controlling for constitutional purposes. In light of the undisputed evidence that the sawed-off shotgun that Plaintiff possessed in 1972 was inoperable and the absence of any indication that Plaintiff did anything other than possess that inoperable object,[3] we are unable to conclude that Plaintiff's prior convictions include "violent" crimes for purposes of the constitutional analysis required by *Britt* and *Whitaker*.

---

2. We need not address the extent to which Plaintiff's conviction for selling marijuana constituted the commission of a violent offense in any detail given that the fact that Mr. Britt had been convicted of possession of methaqualone with the intent to sell or deliver did not preclude the Supreme Court from ruling in his favor.

3. Our dissenting colleague contends that, by focusing on the facts revealed by the record developed in the trial court, we are impermissibly forcing the State "to retry the case against Plaintiff" and analogizes the inquiry that should be made in evaluating the merits of an "as-applied" challenge to the Felony Firearms Act to that which must be conducted in determining the number of prior record points that should be awarded for out-of-state convictions pursuant to N.C. Gen. Stat. § 15A-1340.14(e). Aside from our conclusion that the approach outlined in the text is required by *Britt* and *Whitaker*, we do not believe that the comparison of the elements of specific out-of-state offenses with the elements of specific North Carolina offenses required for

**BAYSDEN v. STATE OF N.C.**

[217 N.C. App. 20 (2011)]

Finally, we do not believe that the fact that Plaintiff has two, rather than one, prior felony convictions demonstrates the appropriateness of a finding in the State's favor. Nothing in *Britt* suggests the existence of such a limitation on a litigant's ability to bring a successful "as-applied" challenge to the constitutionality of the Felony Firearms Act. On the contrary, the reference to "felony convictions" in *Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404, clearly indicates that no "single-conviction" limitation can be found in existing North Carolina jurisprudence relating to such "as-applied" constitutional challenges. Instead, *Britt* and *Whitaker* suggest that the appropriate inquiry requires an analysis of the number, age, and severity of the offenses for which the litigant has been convicted. In view of the fact that Plaintiff's convictions are both older than the single conviction at issue in *Britt* and the fact that both Plaintiff and Mr. Britt have had lengthy post-conviction histories of law-abiding conduct, the fact that Plaintiff has two, rather than one, prior felony convictions, while relevant, is not dispositive. As a result, the fact that the undisputed evidence relating to "the facts of [P]laintiff's crime[s], his long post-conviction history of respect for the law, the absence of any evidence of violence by the [P]laintiff, and the lack of any exception or possible relief from the statute's operation," *Britt*, 363 N.C. at 550, 681 S.E.2d at 323, require us to sustain Plaintiff's "as-applied" challenge to the Felony Firearms Act despite the fact that he has two, rather than one, prior felony convictions.

Thus, for the reasons set forth above, we conclude that Plaintiff's "as-applied" challenge to N.C. Gen. Stat. § 14-415.1 has merit and that the trial court erred by granting the State's summary judgment motion and denying the summary judgment motion filed by Plaintiff. Having concluded that Plaintiff has a right under Article I, Section 30 of the North Carolina Constitution to possess a firearm despite the prohibition set out in N.C. Gen. Stat. § 14-415.1, we need not address Plaintiff's other challenges to the trial court's order. *Britt*, 363 N.C. at 549, 681 S.E.2d at 322 (stating that, "[b]ecause we agree with plaintiff that the application of N.C. [Gen. Stat.] § 14-415.1 to him violates

---

purposes of resolving the legal issue of "substantial similarity," *State v. Fortney*, ___ N.C. App. ___, ___, 687 S.E.2d 518, 525 (2010), is in any way comparable to the determination of whether, as a matter of fact, a litigant committed a violent crime for purposes of the inquiry required by Article I, Section 30 of the North Carolina Constitution. In addition, the fact that the State is entitled to investigate and conduct discovery before seeking or responding to a request for summary judgment provides ample opportunity for the development of a record concerning the extent, if any, to which the felony for which a litigant was previously convicted constituted a "violent crime."

Article I, Section 30 of the North Carolina Constitution, it is unnecessary for us to address any of plaintiff's remaining arguments, and we express no opinion on their merit"). As a result, the trial court's order is reversed and this case is remanded to the Wake County Superior Court for the entry of summary judgment in favor of Plaintiff based upon his "as-applied" challenge to the constitutionality of the Felony Firearms Act.

REVERSED AND REMANDED.

Judges STEPHENS concurs.

Judge BEASLEY dissents by separate opinion.

BEASLEY, Judge, dissenting.

After review of the record and the applicable law, I believe that the North Carolina Felony Firearms Act, N.C. Gen. Stat. § 14-415.1 (2009), constitutionally applies to Plaintiff, and I would therefore affirm the trial court's order granting summary judgment to the State on that issue. Accordingly, I would review Plaintiff's other claims on their merits, and would affirm the trial court's order with regard to those claims as well. Thus, I respectfully dissent.

I.

I first address Plaintiff's contention that the North Carolina Felony Firearms Act (the Act) is unconstitutional as applied to him, as that is the sole issue decided by the majority.

Our Supreme Court has recognized that

> [t]he right to bear arms, which is protected and safeguarded by the Federal and State constitutions, is subject to the authority of the General Assembly, in the exercise of the police power, to regulate, but the regulation must be reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety.

*State v. Dawson*, 272 N.C. 535, 547, 159 S.E.2d 1, 10 (1968)(citation omitted).

Because Plaintiff brings an as applied challenge to the Act, the question before this Court is whether the Act is a reasonable regulation when applied to him. In support of his argument that the Act is

unreasonable when applied to him, Plaintiff, and subsequently the majority of this court, rely heavily on our Supreme Court's opinion in *Britt v. State (Britt II)*, 363 N.C. 546, 681 S.E.2d 320 (2009). In *Britt II*, the Supreme Court found that the Act, prior to the 2010 amendments, was unconstitutional as applied to the plaintiff Barney Britt. In stating its rationale for this holding, the Supreme Court reasoned that

> [b]ased on the facts of plaintiff's crime, his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation, as applied to plaintiff, the 2004 version of N.C.G.S. § 14-415.1 is an unreasonable regulation ... .

*Britt II*, 363 N.C. at 550, 681 S.E.2d at 323.

Since *Britt II* was decided, the Act has been amended to allow for the restoration of firearms rights to felons who meet certain requirements. The General Assembly has ensured that the Act will no longer operate as a regulation towards those situated similarly to the plaintiff in *Britt II*. Plaintiff is expressly excluded from the class of felons who can apply to have their rights restored because one of his crimes was a Class F felony that includes possession of a firearm as an essential element of the offense, and because he has more than one conviction. *See* N.C. Gen. Stat. § 14-415.4(a)(2); § 14-415.4(d)(2) (2011)[1]. Thus, Plaintiff falls into the class of felons that our legislature intended to prohibit from owning firearms.

It is well settled that "a statute enacted by the General Assembly is presumed to be constitutional." *Wayne County Citizens Assn. for Better Tax Control v. Wayne County Bd. of Commrs.*, 328 N.C. 24, 29, 399 S.E.2d 311, 314-15 (1991). "A statute will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise, or the statute cannot be upheld on any reasonable ground." *Id.* (citing *Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 63, 366 S.E.2d 697, 698 (1988)).

Aside from the 2010 amendments to the Act, the fact that Plaintiff committed a violent crime makes this case distinguishable from *Britt II. See* N.C. Gen. Stat. § 14-288.8(c)(3) (2009) (defining a sawed off shotgun as a "weapon of mass death and destruction"). It is certainly reasonable for the General Assembly to decide that those felons who

---

1. N.C. Gen. Stat. § 14-415.4 was an amendment to the Act which allows certain felons to petition for restoration of their rights to own firearms. It was made effective 1 February 2011 by 2010 N.C. Sess. Laws ch. 108, § 7.

have not committed more than one crime, and have not committed any violent crimes, should be afforded an opportunity to have their rights to own firearms restored while repeat felons and those convicted of possession of dangerous firearms should not.

In concluding that Plaintiff has not committed any violent crimes, the majority focuses on Plaintiff's assertion that the sawed off shotgun in his possession was inoperable, and comments that the State failed to produce evidence that disputed this assertion. This argument is unavailing. It is not the State's duty to re-try the cases against Plaintiff. In the analogous context of sentencing an offender with convictions from other jurisdictions pursuant to the Structured Sentencing Act, if the State shows by a preponderance of the evidence that an offense classified as a felony in another jurisdiction is classified as a Class I felony or higher in North Carolina, the conviction from the other jurisdiction is treated as that class of felony for assigning prior record points. N.C. Gen. Stat. § 15A-1340.14(e) (2009). Our courts do not re-weigh the evidence in the other jurisdiction's cases; we simply compare the statutory definitions. As this Court has previously stated, "[t]he comparison of the elements of an out-of-state criminal offense to those of a North Carolina criminal offense does not require the resolution of disputed facts. Rather, it involves statutory interpretation, which is a question of law." *State v. Hanton*, 175 N.C. App. 250, 254-55, 623 S.E.2d 600, 604 (2006)(internal quotations and citations omitted). The same rationale should be applied here. Thus, I would overrule this argument.

II.

Plaintiff also argues that the Act is unconstitutional on its face, as it violates Article I, Section 30 of our state constitution, which provides "the right of the people to keep and bear arms shall not be infringed . . . ." N.C. Const. art. I, § 30. "The standard of review for questions concerning constitutional rights is de novo." *Row v. Row (Deese)*, 185 N.C. App. 450, 454, 650 S.E.2d 1, 4 (2007) (citation omitted). Plaintiff carries the burden of proving that the Act is facially unconstitutional, and to do so he "must establish that no set of circumstances exists under which the [a]ct would be valid. The fact that a statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987)) (internal quotation marks omitted). Facial challenges are rarely upheld "because it is the role of the legislature, rather than this Court,

to balance disparate interests and find a workable compromise among them." *Beaufort Cty. Bd. of Educ. v. Beaufort Cty. Bd. of Comm'rs*, 363 N.C. 500, 502, 681 S.E.2d 278, 280 (2009).

At the outset, I note that although Plaintiff argues for a stronger standard of review for his constitutional challenges, "[t]he rational basis standard for review of regulations upon the right to keep and bear arms has been articulated by North Carolina courts since at least 1921." *State v. Whitaker (Whitaker I)*, 201 N.C. App. 190, 198, 689 S.E.2d 395, 399 (2009) (citations omitted). Further, this Court has already considered, and rejected, facial challenges to the Act prior to the 2010 amendments. *See Britt v. State (Britt I)*, 185 N.C. App. 610, 649 S.E.2d 402 (2007), *rev'd on other grounds*, 363 N.C. 546, 681 S.E.2d 320 (2009); *Whitaker I*, 201 N.C. App at 202-03, 689 S.E.2d at 403. The Act was amended subsequent to those decisions, but the 2010 amendments do not impose any additional restriction of felons' rights to possess firearms. In fact, those amendments provide a process of restoration of rights for certain classes of felons. I decline to hold that this amendment makes an otherwise rational statute irrational, in the same way that our Supreme Court declined to find that the exception in the Act for antique firearms made the otherwise rational statute irrational. *See State v. Whitaker (Whitaker II)*, 364 N.C. 404, 410, 700 S.E.2d 215, 219 (2010). Plaintiff does not meet his heavy burden of showing that the Act is facially unconstitutional.

III.

Plaintiff next asserts that the Act is an *ex post facto law*, a bill of attainder, or both. As a basis for this argument, Plaintiff contends that when the General Assembly amended the Act in 2004 and 2010, it effectively increased the punishment for his past crimes without the benefit of a judicial hearing, because he was stripped of the right to bear arms.

*Ex post facto* laws are expressly prohibited by the United States Constitution and the North Carolina State Constitution. *See* U.S. Const. art. I, § 10; N.C. Const. art. I, § 16. The constitutional prohibition on *ex post facto* laws implicates four types of laws:

1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates a crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law

that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*

*State v. Wiley,* 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002) (quoting *Collins v. Youngblood,* 497 U.S. 37, 42, 111 L. Ed. 2d 30, 38-39 (1990)) (citations omitted)). Article I, Section 10 of the U.S. Constitution also prohibits the passing of a bill of attainder, which "is a legislative act which inflicts punishment without a judicial trial." *United States v. Lovett,* 328 U.S. 303, 315, 90 L. Ed. 1252, 1259 (1946) (citation omitted).

The question of whether the Act is an impermissible *ex post facto* law or bill of attainder has already been considered by, and rejected by, our Supreme Court in *Whitaker II.* However, Plaintiff argues that his case is distinguishable from the plaintiff in *Whitaker II* because the plaintiff in *Whitaker II* had violated the Act whereas here, Plaintiff has complied with the Act at all times, and therefore should not be subjected to what he considers additional punishment. Plaintiff overlooks that this Court has already rejected the argument that the Act is an *ex post facto* law or a bill of attainder when applied to a plaintiff who had not violated the Act. In *Britt I,* we held:

> [b]ecause the intent of the legislature was to create a non-punitive, regulatory scheme by amending N.C.G.S. § 14-415.1, and because the result of the amended statute is not so punitive in nature and effect as to override the legislative intent, N.C.G.S. § 14-415.1 is a non-punitive, regulatory scheme that does not violate the *ex post facto* clause under either the North Carolina Constitution or the United States Constitution.

185 N.C. App. at 616, 649 S.E.2d at 407. Because we found that the Act was not a form of punishment, we also found that it could not be an impermissible bill of attainder that imposes "punishment" without a judicial trial. *See id.* at 617, 649 S.E.2d at 407. Our decision in *Britt I* was overruled only in regard to our analysis of the as applied challenge. *See Britt II,* 363 N.C. at 550, 681 S.E.2d at 323 ("[W]e reverse the decision of the Court of Appeals to the extent that court determined N.C.G.S. § 14-415.1 can be constitutionally applied to plaintiff.") Thus, we remain bound by the former decision of this Court. *See In the Matter of Appeal from Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989)("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." (citations omitted)). The 2010 amendments

to the Act have no bearing on the *ex post facto* and bill of attainder claims. Accordingly, this issue has already been decided.

## IV.

Plaintiff's final argument is that the Act violates the Equal Protection Clause of both the U.S. and North Carolina Constitutions, which guarantee equal protection of the law for all citizens. *See Kresge Co. v. Davis*, 277 N.C. 654, 660, 178 S.E.2d 382, 385 (1971) (stating that the Equal Protection Clause of the XIV amendment has been expressly incorporated into Art. I, § 19 of our State Constitution). Plaintiff argues that the Act is overbroad in prohibiting any felons from owning a firearm, and thus violates his right of equal protection under the law.

Plaintiff insists that this issue should be reviewed under the standard of strict scrutiny, as he repeatedly refers to "a compelling state interest." If this Court were to assume, *arguendo*, that Plaintiff is correct, his argument would be without merit. Although Plaintiff bases his argument on the 2004 amendments to the Act, his argument cannot be decided without considering the Act with the 2010 amendments included. The Act no longer prohibits all felons from owning firearms interminably; nonviolent felons can apply to have their rights to possess firearms restored. Thus, the distinction the General Assembly made was not only between felons and nonfelons, as Plaintiff asserts, but between felons with convictions of violent crimes and nonviolent felons. The trial court properly asserted that the distinction between felons whose crimes involved firearms and those whose crimes did not involve firearms is necessary to serve the compelling state interest in public safety.

Plaintiff also attempts to assert an Equal Protection claim on behalf of the family members of those felons who have lost their right to possess firearms. I would decline to address this issue, because Plaintiff does not have standing to assert this claim. These families, including Plaintiff's wife, are not parties to this proceeding, and there is no basis on which we find that Plaintiff has standing to assert a claim on behalf of these families' right to bear arms when they do not assert that claim on their own behalf. *See Tileston v. Ullman, State's Attorney, et al.*, 318 U.S. 44, 46, 87 L. Ed. 603, 604 (1943).